**Franklin C. BASLER, Plaintiff-Appellee,**

v.

**Eric NELSON, Dr. Nathan Baker, and Malcolm Firth, Defendants-Appellants.**

Court of Appeals of Tennessee,
Western Section at Jackson.

Jan. 28, 1982.

Permission to Appeal Denied by
Supreme Court April 12, 1982.

Robert M. Goff of the law firm of Goff & Goff, Memphis, for defendants-appellants.

John R. Johnson, III, of Eggleston & Johnson, Memphis, for plaintiff-appellee.

TOMLIN, Judge.

This is a Rule 9 appeal from an interlocutory order of the Chancery Court of Shelby County, denying the defendants' motion to dismiss plaintiff's suit for breach of contract on the basis of lack of jurisdiction over either the person of the defendants or the subject matter of this cause. Service of process was had on the defendants in accordance with the provisions of T.C.A. Sec. 20–2–214, commonly called the "long arm statute." The principal issue raised by this appeal is whether or not there are sufficient "minimum contacts" to confer in personam jurisdiction in Tennessee over these three nonresident defendants. We have concluded that there are not and reverse the chancellor.

The plaintiff, a resident of North Carolina, filed suit in the Chancery Court of Shelby County against Nelson and Baker, residents of West Virginia, and Firth, a resident of Florida, alleging that the defendants breached an oral contract whereby the plaintiff was to have assisted the defendants in the planning and development of a Holiday Inn in White Sulphur Springs, West Virginia. Service of process was had upon these defendants through the Secretary of State, pursuant to the provisions of T.C.A. Sec. 20–2–214. Each defendant filed a Rule 12.02(2) T.R.C.P. motion to dismiss for lack of in personam jurisdiction, as well as lack of jurisdiction over the subject matter. Each of these motions was supported by sworn affidavits. The plaintiff filed a counter-affidavit. There are no other pleadings.

The plaintiff and defendant Nelson first met at a conference of Holiday Inn franchise holders in Memphis. Nelson was without experience in motel development, as was the case with his alleged partners Baker and Firth. They possessed a commitment from Holiday Inns, Inc. for the issuance of a license agreement to construct and operate a Holiday Inn in White Sulphur Springs, West Virginia. Plaintiff alleges that defendant Nelson came to the conference in the hopes of finding someone to assist him in the development of this franchise. During the meeting in Memphis, plaintiff and defendant Nelson talked on several occasions, discussing the various steps that might be taken to successfully enter upon and carry out this project.

The complaint states that the following month, at the request of the defendant Nelson, a written proposal or contract outlining the services plaintiff would render and the terms under which they would be rendered was sent from North Carolina to the defendant Nelson, presumably at his home in West Virginia. The complaint further charges that some days later the defendant Nelson telephoned the plaintiff at his home in North Carolina, advising him that his proposal had been accepted. There is no allegation that any of the defendants were in Tennessee at the time the alleged contract was made. The contract was never reduced to writing.

Plaintiff further alleges that defendant Nelson also instructed him to "proceed with the full authority" of all the defendants, pursuant to the written proposal, and that he did so. Plaintiff claims that this relationship was terminated by a letter from the defendant Nelson dated December 27, 1978, a copy of the letter being filed as an exhibit to the complaint.

The contract, which plaintiff alleges was entered into and subsequently breached by the defendants, called for him, among other things, to thoroughly review the plans and modify them where needed, to engage an interior decorator, to obtain a loan commitment, to sell stock necessary to raise the equity capital, to prepare bids for the construction work, to prepare and receive bids and award the general contract, to supervise construction (in West Virginia), to select key staff personnel, and to establish operating policies and control.

According to the plaintiff's affidavit, prior to the alleged breach of this contract by

the defendants, he made two trips to Memphis, covering a total of four days. He also telephoned Memphis thirty-three times. These visits and/or telephone calls were made for the purpose of conferring with Holiday Inns, Inc., the franchisor, or the architects and attorneys allegedly hired to work on this project.

Plaintiff premises his claim for jurisdiction over these defendants on the following sections of T.C.A. Sec. 20–2–214.

20–2–214. *Jurisdiction of persons unavailable to personal service in state— Classes of actions to which applicable.* —(a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

(1) The transaction of any business within the state;

\* \* \* \* \* \*

(5) Entering into a contract for services to be rendered or for materials to be furnished in this state;

(6) Any basis not inconsistent with the constitution of this state or of the United States;

\* \* \* \* \* \*

The courts of this state, as well as the federal courts, have dealt with the long arm statute from time to time, as obvious constitutional questions were presented as to legislation of this type. Subsequent to the addition of sub-section 6 to T.C.A. Sec. 20–2–214, court decisions have come to recognize Tennessee as a "minimum contacts" state. Although decided prior to the addition of sub-section 6, the case of *Southern Machine Co., Inc. v. Mohasco Industries, Inc.,* 401 F.2d 374 (6th Cir. 1968), has come to be recognized as a significant case dealing with this subject. *See Nicholstone Book Bindery, Inc. v. Chelsea House Publishers, et al,* 621 S.W.2d 560 (Tenn.1981); *Carborundum Co. v. Bay Fabricators, Inc.,* 461 F.Supp. 437 (E.D.Tenn.1978); *Warren v. Dynamics Health Equipment Mfg. Co., Inc.,* 483 F.Supp. 788 (M.D.Tenn.1980).

The court in *Mohasco* stated that the broadly-phrased long arm statute of this state was limited only by due process considerations as set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The U.S. Supreme Court in *International Shoe* stated that "traditional notions of fair play and substantial justice" can be protected, but only if the foreign defendants have certain "minimum contacts" with the forum state. In *Mohasco* we find what has come to be called a "three-part test" to determine whether sufficient "minimum contacts" exist:

... three criteria emerge for determining the present outer limits of *in personam* jurisdiction based on a single act. First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. 401 F.2d at 381.

■ In his brief, plaintiff claims that the mere presence of the defendant Nelson in Tennessee, in which state he engaged in preliminary discussions with plaintiff, was sufficient to confer jurisdiction upon our courts. On the other hand, from his affidavit, it seems that plaintiff relies heavily upon *his own* contacts with Tennessee; namely, two 2-day visits and thirty-three phone calls, as a sufficient basis for conferring jurisdiction. We are not concerned with the quantity or quality of contacts the plaintiff had with Tennessee. It is the contacts of the defendants with this state on which jurisdiction must stand or fall.

■ Taking a broad look at all the pleadings, they reflect that the plaintiff and defendant Nelson had preliminary discussions concerning various aspects of motel operation. No doubt these discussions were

initiated by the defendant Nelson in Tennessee. The negotiations surrounding the alleged contract between plaintiff and defendants took place between defendant Nelson in West Virginia and plaintiff in North Carolina. The written proposal, which plaintiff says forms the basis of the oral agreement, was mailed from North Carolina to West Virginia. The telephone call allegedly accepting the proposal originated in West Virginia to the plaintiff in North Carolina. The proposed Holiday Inn for which plaintiff allegedly agreed to assume many of the responsibilities was to be built in West Virginia. Although in carrying out this contract to completion plaintiff might be required to travel to Memphis from time to time to confer with the franchisor, clearly the contract was to be executed in North Carolina and West Virginia.

We believe that we can dispose of this case without a survey of the present status of the law in this state. Mr. Justice Brock, in *Nicholstone*, has done an excellent job in this regard. Needless to say, we find that plaintiff's case satisfies none of the three criteria laid down in *Mohasco*. Not only do the Tennessee contacts in this case fail to reach the necessary minimum, they do not approach a scintilla of a contact.

The following quotation from the opinion of Judge Nearn of this Court in the case of *Continental Leasing Corp. v. Economy Leasing Co., Ltd.*, 564 S.W.2d 956, 959 (Tenn.App.1977), *cert. denied*, best expresses our conclusion in this case:

> ... Our "sense of fair play" is offended in this case by dragging the non-resident defendants to the State of Tennessee. Not that they may not be dragged elsewhere, but not to Tennessee.
>
> The real parties to this suit are the estate of the Arkansan, and Indiana and Florida business entities. Neither this state nor its citizens have the slightest interest in the outcome of this lawsuit.

It follows that the judgment below is reversed, and the suit is dismissed as to all defendants. All costs are adjudged against the plaintiff, for which execution may issue, if necessary.

NEARN and SUMMERS, JJ., concur.