IN THE COURT OF APPEALS

AT KNOXVILLE

FILED

July 30, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

IN THE MATTER OF:              ) C/A NO. 03A01-9804-JV-00119
    DESTINI JANE ISAACSON,        )
                                  )
    A minor under 18 years of age, )
                                  )
                                  )
                                  )
STACEY L. ISAACSON,            )
                                  ) APPEAL AS OF RIGHT FROM THE
    Petitioner-Appellant,          ) LOUDON COUNTY JUVENILE COURT
                                  )
                                  )
v.                             )
                                  )
                                  )
                                  )
MARK L. FENTON,                )
                                  ) HONORABLE JOHN O. GIBSON,
    Respondent-Appellee.           ) JUDGE


For Appellant                    For Appellee

STANLEY F. LaDUKE                RONALD J. ATTANASIO
Knoxville, Tennessee             Hurley, Sharp & Attanasio
                                 Knoxville, Tennessee




O P I N I O N



AFFIRMED AND REMANDED                              Susano, J.

In this paternity case, the trial court granted the putative father's motion to dismiss. In so doing, the court stated that it "[did] not feel that a visit of ten...days by the [respondent] to [Tennessee] would give this state the power to require him to stand trial in this cause," where service of process was effected on him pursuant to T.C.A. § 20-2-214,[1] the Tennessee Long Arm Statute. The petitioner appealed, contending that the trial court erred in finding that it did not have *in personam* jurisdiction over the respondent.

In connection with this appeal, the petitioner-appellant, Stacey L. Isaacson, filed a "Statement of the Evidence and Proceedings" ("Statement"), apparently based upon a perceived need to comply with Rule 24, T.R.A.P.[2] That Statement contains this introductory sentence:

> On October 8, 1997, there was a hearing upon the record: (1) Petitioner's sworn Petition for Paternity, (2) issued Summons returned served, (3) Petitioner's Return of Service Affidavit, (4) Respondent's Motion to Dismiss for lack of personal jurisdiction, supporting Affidavit, and Brief.

---

[1]T.C.A. § 20-2-214 provides, in pertinent part, as follows:

> (a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
>
> \*   \*   \*
>
> (6) Any basis not inconsistent with the constitution of this state or of the United States;
>
> \*   \*   \*

[2]Since this case was disposed of "on the papers," *i.e.*, pursuant to the summary judgment procedure, there was no need to file a transcript or statement of the evidence.

2

It is clear from Ms. Isaacson's Statement that the trial court did not hear any oral testimony. The Statement is basically a recitation of counsel's arguments; however, it does contain the following comments describing the material considered by the trial court:

> The [trial judge] listened to the statements and arguments from both attorneys and interrogated both attorneys. He referred to the Petition for Paternity and attached Paternity testing results, which were considered as evidence; the geographical history of the Petitioner, Respondent, and child; that the Petitioner, Respondent, and child lived in North Carolina; that the laboratory results indicated Respondent was the father of the child; and that Respondent spent ten (10) days in Tennessee when he visited the child.

In ruling on the respondent's motion, the trial court obviously considered "matters outside the pleadings." *See* Rule 12.03, Tenn.R.Civ.P. Thus, we treat the decree below as one for summary judgment. *Id*. The issue before us is the same as the issue before the trial court: Does the record reflect undisputed material facts conclusively establishing the respondent's defense that the trial court lacked *in personam* jurisdiction over him? *See* **Byrd v. Hall**, 847 S.W.2d 208, 215 n.5 (Tenn. 1993). The respondent, as the moving party, had the burden of presenting facts, admissible in evidence,[3] to make out the ground of his motion. *Id*.

---

[3]The facts do not have to be in admissible *form*. *See* **Byrd v. Hall**, 847 S.W.2d 208, 215-16 (Tenn. 1993). Thus, while a verified petition and affidavit are not admissible as such, the material set forth in those documents can be considered on summary judgment if the person testifying under oath, in each instance, is competent to testify to those facts in court.

The child in question -- Destini Jane Isaacson (DOB: March 25, 1987) -- was conceived outside the State of Tennessee. She was born in Denver, Colorado. After that, she lived with her mother -- the petitioner -- in the following states, in the order shown: in Arizona, Alaska, North Carolina, Texas, again in Alaska, and finally in Loudon County, Tennessee. She moved to the last location in February, 1996.

In the April/May, 1996, time frame, the parties and their child submitted to tests, apparently in the State of North Carolina, that led to the issuance of a Paternity Evaluation Report by Genetic Design, Inc., of Greensboro, North Carolina. That report reflects that the probability of respondent's paternity is 99.98%.[4]

The verified paternity petition filed by Ms. Isaacson indicates that the respondent's "last known address [was]...Shelton, Washington." The petition also states that the respondent "spent ten...days in Loudon County, Tennessee, during May and June of 1997, during his visitation with the child."

The respondent submitted his affidavit in support of his motion. That affidavit contains the following statements:

> That I am over eighteen (18) years of age and have personal knowledge of all matters stated herein.
>
> That I have visited the State of Tennessee on one (1) occasion, that being in May/June of

---

[4]Since the Paternity Evaluation Report is admissible, *see* T.C.A. § 24-7-112(b)(2)(A), we have considered it to the extent that it is relevant to the question now before us.

> 1997 for a period of approximately eight (8)
> days.
>
> That during my stay I also visited Atlanta,
> Georgia for approximately two (2) days.
>
> Other than the single brief visit set forth
> above, I have not had any contact with the
> State of Tennessee.

The petitioner did not file any further material in response to the respondent's affidavit.

We must decide if the respondent's one visit to Tennessee is sufficient to permit a Tennessee court to exercise personal jurisdiction over him in this paternity case.

The petitioner contends that the respondent's one visit is a sufficient contact with the State of Tennessee to permit the Loudon County Juvenile Court to exercise *in personam* jurisdiction over him. She relies upon that portion of the Tennessee Long Arm Statute that authorizes a court of this state to exercise personal jurisdiction over a defendant "as to any action or claim for relief arising from:...(6) [a]ny basis not inconsistent with the constitution of this state or of the United States;...", T.C.A. § 20-2-214(a)(6). She also relies upon the following language of T.C.A. § 36-2-307(b), which is a part of the paternity statutes:

> Any minimum contact relevant to a child being
> born out of wedlock that meets constitutional
> standards shall be sufficient to establish
> the jurisdiction of the courts of Tennessee
> over the parents for an action under this
> chapter.

5

The law regarding personal jurisdiction is stated in capsule form in the Supreme Court case of *Landers v. Jones*, 872 S.W.2d 674 (Tenn. 1994):

> Personal jurisdiction of non-resident defendants may be obtained by service of process under the Tennessee Long Arm Statute (Tenn.Code Ann. § 20-2-214(a)) if, and only if, the non-resident defendant has such minimum contacts with this state that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 531 (Tenn. 1992).

*Landers,* at 675. While T.C.A. § 36-2-307(b), as quoted in pertinent portion above, was enacted subsequent to the *Landers* case, it is clear that it does not, and could not, expand the *in personam* jurisdiction of our courts beyond the constitutional boundary set forth in *Landers*.

The requirement that there be minimum contacts between a defendant and the forum protects an individual's liberty interest in not being subjected to the binding judgment of a forum with which he or she has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S.Ct. 2174, 2181-82 (1985).

As previously indicated, the petitioner in this case relied upon T.C.A. § 20-2-214(a)(6) to obtain service of process on the respondent. This code section expands the jurisdiction of Tennessee's courts to the full extent permitted by the due

6

process requirements of Article I, Section 8 of the Constitution of Tennessee and the Fourteenth Amendment to the United States Constitution. *Shelby Mutual Insurance Co. v. Moore*, 645 S.W.2d 242, 244-45 (Tenn.App. 1981).

The adequacy of a nonresident's contacts with the forum must be assessed on a case-by-case basis to determine whether the requisite circumstances are present. *Kulko v. Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697 (1978) and *Smith v. Smith*, 254 Ga. 450, 330 S.E.2d 706, 709 (1985). This analysis is not to be undertaken in a mechanical fashion; rather, it must focus primarily on the defendant, the forum, and the nature of the litigation. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872 (1984); *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486 (1984); and *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580 (1977).

It is the quality and nature of a defendant's contacts with the forum that are important, not the latter's contacts with the plaintiff or the plaintiff's contacts with the forum. *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160 (1945); *Smith v. Smith*, 254 Ga. 450, 330 S.E.2d 706, 709 (1985); *Basler v. Nelson*, 633 S.W.2d 491, 493 (Tenn.App. 1982). Considerations such as (a) the burden on the nonresident defendant, (b) the interest of the forum state in applying its own law, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the various states' shared interest in furthering substantive

social policies are secondary.  *World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 292-94, 100 S.Ct. 559, 564-65 (1980) and

*Schilz v. Superior Court*, 144 Ariz. 65, 695 P.2d 1103, 1107

(1985).

     While a plaintiff's residence in the forum state may

enhance the defendant's own contacts, *Keeton v. Hustler Magazine,*

*Inc.*, 465 U.S. 770, 780, 104 S.Ct. 1473, 1481 (1984), the

plaintiff's actions alone will never be sufficient to establish

minimum contacts between the defendant and the forum state.

Thus, a plaintiff cannot, by some unilateral action, confer

jurisdiction over a nonresident defendant when minimum contacts

between the defendant and the forum are absent.  *Kulko v.*

*Superior Court*, 436 U.S. 84, 93-94, 98 S.Ct. 1690, 1697-1698

(1978); *Hansen v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228,

1239-40 (1958); *Schilz v. Superior Court*, 144 Ariz. 65, 695 P.2d

1103, 1107 (1985); *Goldenhersh v. Febrey*, 711 P.2d 717, 719

(Colo.App. 1985); and *Barnhart v. Madvig*, 526 S.W.2d 106, 108-09

(Tenn. 1975).

     A single act by a nonresident defendant may be

sufficient to create a substantial connection between the

defendant and the forum state.  *McGee v. International Life*

*Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201 (1957).

However, a single or occasional act will not suffice as a minimum

contact if the nature of the act and the circumstances

surrounding its commission create only an attenuated affiliation

with the forum state. ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 475 n. 18, 105 S.Ct. 2174, 2184 n. 18 (1985).

In this case, we are dealing with a solitary visit to Tennessee. As the petitioner points out, it is a reasonable inference from the facts before us that when the respondent visited this state, he knew that there was a strong probability that the petitioner's child was his; but this does not change the fact that we are dealing with only one visit.

We have held that visits to this state to exercise visitation are not sufficient to vest a court with *in personam* jurisdiction over a nonresident defendant in a situation where a plaintiff is attempting to domesticate and/or enforce a foreign divorce judgment in this state. *See **Miller v. Miller***, 1987 WL 15143 (Tenn.App. at Nashville, August 5, 1987); ***Turner v. Turner***, 1994 WL 677592 (Tenn.App. at Jackson, December 6, 1994). This is somewhat analogous to a paternity case in that both actions seek to impose personal obligations on a parent.

We find and hold that the respondent's one short visit to Tennessee, standing alone, does not satisfy the constitutional requirement of minimum contacts. We accept as true -- because it is not controverted in the record -- that this is the only contact that the respondent had with this state. Obviously, the underlying basis for this paternity action -- the alleged fathering of the child in question -- did not arise out of this solitary, post-birth contact. As far as we know, there was nothing more to the visit than appears on the face of the record,

9

*i.e.*, the respondent came to this state, visited the subject child to an extent not shown in the record, and then visited Atlanta for two days as a part of the trip to Tennessee. If there was more to the respondent's visit to Tennessee than appears from the verified petition and the respondent's affidavit, it was the petitioner's responsibility to come forth with these facts once the respondent presented verified facts to support his claim that the trial court lacked *in personam* jurisdiction over him. ***Byrd***, 847 S.W.2d at 215.

We believe that the respondent's contact with Tennessee is an "attenuated affiliation" with this state. *See* ***Burger King Corp.***, 471 U.S. 462, 475 n. 18. We cannot say that the respondent's contact is such that this Washington State resident could have or should have "reasonably anticipate[d] being haled into court" in Tennessee. *See* ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. at 297.

We find no error in the grant of summary judgment in this case.

Accordingly, the judgment of the trial court is affirmed with costs on appeal taxed to the appellant. This case is remanded to the trial court for collection of costs assessed below, pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Houston M. Goddard, P.J.


_____
William H. Inman, Sr.J.